UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UTOPIAN WIRELESS CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 2:20-03376** |
| **CENTRAL LAFOURCHE HIGH SCHOOL** and **LAFOURCHE PARISH SCHOOL BOARD** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss (Doc. 25) filed by Central Lafourche High School and Lafourche Parish School Board (collectively referred to as "LPSB" or "Defendants"). For the following reasons, the Motion is **DENIED**.

### BACKGROUND

This matter arises out of an alleged breach of contract. Plaintiff Utopian Wireless Corporation ("Utopian") entered into an Educational Broadband Service Lease Agreement (the "Lease Agreement" or "Lease") with Defendant Central Lafourche High School on December 31, 2006. To understand the nature of Plaintiff's claims against Defendants, this Court finds that it is necessary to lay a foundation regarding Educational Broadband Service leases in general.

The Federal Communications Commission ("FCC") regulates the use of radio frequencies in the United States. In doing so, the FCC issues licenses that authorize the license holder (the "licensee") to transmit on specific

1

frequencies or ranges of frequencies in particular geographic areas. These licenses are commonly known as "spectrum licenses" because the license authorizes the licensee to utilize a portion of the electromagnetic spectrum. Educational Broadband Service ("EBS") is a specific kind of spectrum license. The FCC allows holders of EBS spectrum to lease their licenses to third-party wireless carriers for terms of 30 years, authorizing the third-party lessee to use a portion or all of the EBS license holder's spectrum for commercial purposes.

Here, the FCC has issued EBS channels B1 through B4 (the "Channels") to Central Lafourche High School to transmit in the Chacahoula, Louisiana area. Utopian leases the Channels from Central Lafourche High School pursuant to the aforementioned Lease Agreement.[1] The Lease Agreement commenced on June 1, 2007 after the parties cooperated to file a long-term lease application with the FCC and Utopian's authority to lease the spectrum license subject to the Lease Agreement was approved by the FCC.

The Lease Agreement is subject to a 10-year term with two automatic 10-year renewal periods for a maximum term of 30 years from commencement unless it is terminated in accordance with the applicable provisions of the Lease Agreement.[2] Plaintiff alleges the Lease has not been terminated and that the parties are currently in the first 10-year renewal period of the Lease Agreement.

In accordance with the Lease Agreement, the parties agreed to "cooperate in the preparation and submission of all applications . . . necessary to secure any FCC approval, consent or other action required to effectuate [the

---

[1] In addition to the EBS Lease Agreement that governs the lease of the license, the parties also entered into an EBS Equipment Lease in September of 2011, whereby Utopian leased to Central Lafourche High School certain wireless link equipment required for the operation of the spectrum property involved in the EBS Lease Agreement.
[2] Doc. 16-1 at 4.

Lease Agreement]."[3] The parties further agreed that "[Central Lafourche High School] will use its best efforts to obtain and maintain all licenses, permits, and authorizations required or desired by [Utopian] for the use of the Channels, and will remain eligible under the FCC rules to provide the Lessee Capacity."[4] In October of 2020, Central Lafourche High School filed a renewal for its license with the FCC, as required by FCC regulations. In addition to the license renewal, FCC regulations required the parties to file a long-term lease extension application, FCC Form 608, in order for the FCC to approve the continued lease of the license. Utopian requested Central Lafourche High School to cooperate in filling out the application to no avail. As a result, the FCC's approval of the lease expired, and thus, Utopian lost its authority to lease the license from Central Lafourche High School.

In response to Utopian's requests, the Lafourche Parish School Board sent a letter to Utopian via email on October 13, 2020 indicating that neither the School Board nor Central Lafourche Parish High School had any record or copy of the agreement, but to the extent there was an agreement, the School Board had not received a rental payment since May of 2010. The letter then stated that it constituted formal notification that the School Board considered the lease terminated and would not accept or consider a contract renewal with Utopian at that time.

In the Lease Agreement, the parties agreed that the agreement "may be terminated by either Party upon uncured material breach of the other Party, provided that the breaching Party shall be provided with written notice by the non-breaching Party of the alleged grounds for the breach and allowed a thirty

---

[3] Doc. 16-1 at 8.
[4] Doc. 16-1 at 11. "Lessee Capacity" is defined under the Lease Agreement as "all capacity on the Channels apart from the Lessor's Reserved Capacity." Doc. 16-1 at 3.

(30) day period for cure following such notice."[5] Additionally, the parties agreed that "any notice required to be given by one Party to the other under [the Lease Agreement] will be delivered using a reliable national express overnight delivery service and will be effective upon receipt."

In response to the School Board's email, Utopian forwarded a copy of the Lease Agreement to counsel for Defendants on October 26, 2020. Additionally, on November 13, 2020 Utopian sent a check for $64,000 to Central Lafourche High School via overnight mail for monthly rental payments Utopian owed under the Lease Agreement through November 2020. As of the day Utopian filed its Amended Complaint, Central Lafourche High School had not endorsed the check, nor had it cooperated in the filing of FCC Form 608.

Plaintiff comes before this Court seeking: (1) a declaratory judgment that the Lease Agreement and the Equipment Lease are in full force and effect; (2) a finding that Defendants breached the Lease Agreement, including an award of damages and attorneys' fees and costs in favor of Utopian; (3) specific performance by filing the required FCC Form 608 application; and (4) any other relief in law or equity that this Court deems appropriate. Now before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff opposes.

## LEGAL STANDARD

### I. Rule 12(b)(1) Motion to Dismiss

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[6] In ruling on a Rule 12(b)(1) motion to dismiss, the court

---

[5] Doc. 16-1 at 9.
[6] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[7] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[8]

## II.   Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[9] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[11] The court need not, however, accept as true legal conclusions couched as factual allegations.[12] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[13] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[14] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[15]

## LAW AND ANALYSIS

### I.   Subject Matter Jurisdiction

---

[7] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).
[8] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).
[9] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[10] *Id.*
[11] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[12] *Iqbal*, 556 U.S. at 678.
[13] *Id.*
[14] *Lormand*, 565 F.3d at 255–57.
[15] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

Plaintiff's Amended Complaint states that jurisdiction is properly vested in this Court pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds the jurisdictional threshold of $75,000.00. Defendants argue that Plaintiff fails to establish that the amount in controversy exceeds the jurisdictional threshold, and thus, Plaintiff's claims against Defendants should be dismissed for lack of subject matter jurisdiction.

As the party invoking federal diversity jurisdiction, Plaintiff "bears the burden of establishing the amount in controversy by a preponderance of the evidence."[16] "The district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy."[17] The sum claimed by Plaintiff controls the amount in controversy if the claim is apparently made in good faith.[18] "Dismissal is justified only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."[19]

Here, Plaintiff seeks declaratory and injunctive relief. The Fifth Circuit has made clear that "the amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented."[20] Plaintiff's Amended Complaint states that "the value of the leasehold interest [Plaintiff] seeks to protect exceeds $75,000.00." Plaintiff alleges that "educational spectrum licenses, like the one involved in this matter, are prime/valuable spectrum licenses because they are frequently

---

[16] Hartford Ins. Grp. v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).
[17] St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253–54 (5th Cir. 1998).
[18] St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).
[19] *St. Paul Reinsurance Co.*, 134 F.3d at 1253 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)) (internal quotations omitted).
[20] *Id.* at 1252–53 (quoting Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983)).

used by national wireless carriers." Plaintiff's Amended Complaint also states that Plaintiff "has invested in excess of $100,000.00 in this license." This Court finds no reason to believe that Plaintiff has made these claims in bad faith. Further, neither the allegations in the Amended Complaint nor the arguments asserted by Defendants show to a legal certainty that the amount in controversy is less than the jurisdictional threshold.

Defendants argue that Plaintiff cannot satisfy the amount in controversy requirement because (1) Plaintiff has no interest in the Lease Agreement due to Plaintiff's failure to make any rental payment to the LPSB for more than 10 years; and (2) even if Plaintiff does have an interest in the Lease Agreement, the valuation is entirely speculative because it is based on Plaintiff assigning its interest in the lease to a third party, which Defendants allege is subject to LPSB's approval. However, in response to Defendants' first argument, this Court finds that it appears to constitute an argument against the merits of the case, not the amount in controversy. Plaintiff specifically asks this Court for a declaratory judgment that the Lease is in full force and effect. As stated above, in an action for declaratory relief, the amount in controversy is "the value of the right to be protected."[21] Thus, in deciding whether this Court has subject matter jurisdiction in this case, the question is not whether Plaintiff has an interest in the Lease but rather what is the value to Plaintiff of the interest in the Lease that Plaintiff is seeking to protect. Therefore, this Court finds Defendants' first argument does not support their claim that Plaintiff cannot satisfy the amount in controversy requirement.

In response to Defendants' second argument, this Court invokes its right to resolve disputed facts to determine whether it has subject matter

---

[21] *Id.* (quoting Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983)).

jurisdiction over this case.[22] Defendants argue that Plaintiff's valuation of its interest in the Lease is entirely speculative as it is based on Plaintiff's intent to reassign its interest to a third party, which Defendants allege is subject to LPSB's approval. Defendants reference Section 11 of the Lease Agreement which states, in pertinent part, "*Lessor* will not assign or transfer its rights and/or obligations under this *Agreement* . . . without the prior written consent of *Lessee* . . . ."[23] Plaintiff avers, and this Court agrees, that Central Lafourche High School is the "Lessor," not the "Lessee," under the Lease Agreement.[24] Thus, contrary to Defendants' assertion, it is Central Lafourche High School that cannot transfer or assign its rights under the Lease Agreement without the written consent of Utopian, and the Lease Agreement contains no restrictions on Utopian's ability to assign or transfer its rights under the Lease. As a result, Defendants second argument also fails, and this Court finds that Defendants have not shown to a legal certainty that the amount in controversy does not exceed $75,000.00.

Contrarily, Plaintiff has offered undisputed evidence to support its allegation that the amount in controversy exceeds $75,000.00. Specifically, Utopian submitted a declaration from its President wherein he declares, under

---

[22] *See Den Norske Stats Oljesels kap As*, 241 F.3d at 424 (citing Barrera–Montenegro v. United States, 74 F.3d 657, 659 (5th Cir.1996)) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").
[23] Doc. 16-1 at 9.
[24] The Court relies on the Educational Broadband Service Lease Agreement attached to Plaintiff's Amended Complaint as Exhibit 1. The first paragraph of the Lease Agreement specifically states:
> This Educational Broadband Service ("*EBS*") Lease Agreement ("*Agreement*") is executed on December 31, 2006 (the "*Effective Date*"), by and between Central Lafourche High School, a Louisiana school with its principal offices at 4820 HWY 1, Mathews, Louisiana 70375 ("*Lessor*"), and Utopian Wireless Corporation, a Delaware corporation with its principal offices at 1010 Wayne Avenue Suite 950, Silver Spring, Maryland 20910 ("*Lessee*").

Doc. 16-1 at 1. In addition, Section 19 of the Agreement labels Utopian Wireless Corporation as the "Lessee" and Central Lafourche High School as the "Lessor." Doc. 16-1 at 11−12.

penalty of perjury, that Utopian would receive substantially more than $300,000 if it were to sublease its interest in the Lease to a national wireless carrier, such as T-Mobile.[25] Accordingly, considering the controlling allegations in Plaintiff's Amended Complaint as well as the undisputed evidence in support of those allegations, this Court finds that Plaintiff has shown by a preponderance of the evidence that the value of the leasehold interest it seeks to protect is greater than $75,000.00. Thus, Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is denied.

## II. Failure to State a Claim

Defendants also argue that Plaintiff's claims against Defendants should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Specifically, Defendants allege that (1) Utopian's request for specific performance calls for an unconstitutional remedy; (2) Utopian has failed to cure its breach, and thus the contract between the parties is extinguished; (3) Utopian's claims are time barred by the equitable defense of laches; and (4) Utopian's claims are barred by the doctrine of unclean hands. This Court will address each argument in turn.

First, Defendants contend that in order to award specific performance against the LPSB, this Court must issue a writ of mandamus pursuant to Louisiana Civil Code article 3863. Defendants argue that because Plaintiff fails to request such a remedy, Plaintiff has failed to state a claim for relief which can be granted. Plaintiff contends, and this Court agrees, that Plaintiff is entitled to seek specific performance as a result of Defendants' alleged breach of contract. Defendants cite to *Charter School of Pine Grove, Inc. v. St Helena Parish School Board* in support of their contention; however, its holding

---

[25] Doc. 28-6 at 2.

supports the arguments asserted by Plaintiff.[26] Indeed, the First Circuit Court of Appeal of Louisiana held that specific performance, as opposed to a writ of mandamus, is the appropriate remedy to enforce a school board's breach of contract that involves discretionary functions of the board.[27] Here, Defendants specifically argue that "the decision of the School Board to deny or ignore any lease with Utopian is entirely discretionary."[28] Accordingly, this Court finds that Plaintiff is entitled to seek specific performance. Further, this Court finds that Defendants' argument ignores Section 20.2 of the Lease Agreement which specifically provides that Plaintiff is entitled to injunctive relief and specific enforcement of the Agreement in the event of a breach of the Agreement by Defendants.[29] Consequently, Defendants' first argument fails.

Second, Defendants seemingly argue that because Plaintiff did not cure its breach of contract, the Lease Agreement has terminated, and thus Plaintiff does not have any contractual rights in the Lease. When ruling on a 12(b)(6) motion to dismiss, however, a court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[30] Further, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[31] This Court finds there are no allegations in the Amended Complaint to support an argument under Rule 12(b)(6) that the Lease is terminated. Accordingly, Defendants' second argument fails.

---

[26] *See* Charter Sch. of Pine Grove, Inc. v. St. Helena Parish Sch. Bd., 9 So.3d 209, 221 (La. App. 1 Cir. 2009).
[27] *Id.* at 221–225.
[28] Doc. 25-1 at 11.
[29] Doc. 16-1 at 12. ("*Lessee* will be entitled to injunctive relief and specific enforcement of this *Agreement* in a court of equity without proof of specific monetary damages, but without waiving any right thereto, in the event of breach of this *Agreement* by *Lessor*.")
[30] *Lormand*, 565 F.3d at 232.
[31] Body by Cook, Inc. v. State Farm Mutual Automobile Ins., 869 F.3d 381, 385 (5th Cir. 2017) (quoting Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)).

Defendants third and fourth arguments are a premature assertion of the affirmative defenses of laches and unclean hands. The Court is generally limited to the facts appearing on the face of the complaint and its proper attachments in ruling on a 12(b)(6) motion to dismiss.[32] Therefore, "[d]ismissal for failure to state a claim based on an affirmative defense is only proper when the defense appears on the face of the pleadings."[33]

"Laches is an equitable defense born from the longstanding maxim 'equity aids the vigilant, not those who slumber their rights.'"[34] The Supreme Court of Delaware has held that a defense of laches "generally requires the establishment of three things: first, knowledge by the claimant; second, unreasonable delay in bringing the claim; and third, resulting prejudice to the defendant."[35] Here, the issues of knowledge, unreasonable delay, and prejudice are not apparent from the face of Plaintiff's Amended Complaint, and thus, it is not suitable for this Court to decide the issue of laches at the motion to dismiss stage.[36]

Defendants also argue that Plaintiff's claims are barred by the doctrine of unclean hands, which provides that "a litigant who engages in reprehensible conduct in relation to the matter in controversy . . . forfeits his right to have the court hear his claim, regardless of the merit."[37] Delaware courts have held that "a party raising the doctrine of unclean hands must produce some credible evidence to support his defense because there is a rebuttable presumption that

---

[32] Wilson v. Birnberg, 667 F.3d 591, 595 (5th Cir. 2012).
[33] Helpful Hound, LLC v. New Orleans Building Corp., 333 F.Supp.3d 593, 601 (E.D.La. 2018) (quoting Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 726 (5th Cir. 2013))(internal quotations omitted).
[34] Reid v. Spazio, 970 A.2d 176, 182 (Del. 2009).
[35] *Id.* at 182−83 (citing Homestore, Inc. v. Tafeen, 888 A.2d 204, 210 (Del. 2005)).
[36] *See* Bd. of Commissioners of the Port of New Orleans v. New Orleans Terminal, LLC, et al., 2013 WL 5934609, at *3 (E.D.La. 2013) (citing Union Pacific Railroad Company v. Dunham Price Marine, et al., 2008 U.S. Dist. LEXIS 62242, at *12 (W.D.La. 2008)).
[37] *See* In re Rural/Metro Corp. Stockholders Litigation, 102 A.3d 205, 238 (Del. Ch. 2014) (citing Portnoy v. Cyro-Cell Int'l, Inc., 940 A.2d 43, 80−81 (Del. Ch. 2008)).

11

'all persons act honestly and properly in seeking judicial relief.'"[38] Therefore, by its very nature, the doctrine of unclean hands requires the Court to consider facts beyond the face of Plaintiff's Amended Complaint in determining its applicability, and thus it is not suitable for this Court to decide the issue of unclean hands via Defendants' Motion to Dismiss. Accordingly, Defendants' third and fourth arguments also fail, and Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss is **DENIED**.

*[signature]*

---

[38] Deutsche Bank Nat'l Trust Co. v. Hines, 2016 WL 7437860, at *3 (Del. Ch. 2016) (citing In re Barker Trust Agreement, 2007 WL 1800645, at *11 (Del. Ch. 2007)).